THE OHIO LOAN & DISCOUNT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1174. Promulgated May 16, 1944.

*F. N. Acker* (*an officer*) for the petitioner.
*Cecil H. Haas, Esq.*, for the respondent.

OPINION.

LEECH, *Judge*: Respondent has determined a deficiency in personal holding company surtax for the year 1939 of $22,918.95 and a penalty of $5,729.74.[1] This determination was based upon respondent's action in eliminating an item of $25,510.28 included by petitioner in its income returned for that year and representing recoveries made in that year on debts charged off as worthless in prior years. This adjustment resulted in a decrease in petitioner's gross income other than personal holding company income to less than 20 percent of total gross income and the consequent imposition of a personal holding company surtax and a penalty. We find the facts as stipulated.

Petitioner has, since December 31, 1925, used a reserve system for treating bad debts. Consistently, during all of that period and without question by respondent, it has used a system of accounting whereby it deducted from gross income and added to this reserve balance the amount estimated as necessary to cover debts anticipated to become worthless during the year. As debts were actually ascertained to be worthless they were eliminated from accounts receivable and charged against the balance in this reserve. In the event of subsequent collection of those debts, the amount realized was included in gross income in the year of such collection.

In the taxable year petitioner collected debts in the sum of $25,510.28 which had been charged against its reserve in prior years. In accordance with its established custom it included these collections in gross income for that year and paid tax thereon. Of its gross income as thus computed, less than 80 percent represented "personal holding company income" as defined by section 502 (a), I. R. C. If this income was correctly computed it did not fall within the definition of a personal holding company under section 501 (a), I. R. C. It consequently filed no personal holding company return for that year.

In determining the deficiency respondent eliminated from petitioner's gross income the above item of $25,510.28, and added this sum to the balance in its reserve for bad debts. Because of the large amount in that reserve resulting from his action, respondent then disallowed a deduction taken by petitioner on its return for that year of $10,992.86 as an addition to this reserve. The result was to decrease gross income by $25,510.28, and the net taxable income reported

---

[1] Secs. 500, 501, 502, 503, 291, I. R. C., as amended.

by petitioner by the amount of $14,517.42. The effect of this action was to carry into income of the taxable year in which the $25,510.28 was actually received, only $10,992.86. The balance of $14,517.42 was left to be reflected in net income for succeeding years through the reduction or elimination of deductions for additions to the reserve for those years. This resulted, for the taxable year, in a computation of gross income to petitioner of which more than 80 percent was personal holding income and respondent thereupon asserted the personal holding company surtax here in question plus a delinquency penalty for failure to file a personal holding company return.

We are not oblivious of another issue possibly lurking in item 2 of paragraph 4 of the stipulation. The parties, however, have definitely limited the issue for our consideration to the sole question of whether this item of $25,510.28 was properly included by petitioner in income for 1939, the year in which it was received. In view of that deliberate action of the parties, we confine our decision to the issue submitted.

Respondent's position is that, as to the petitioner who is on a reserve charge-off system, the bad debt recoveries in dispute are not to be reported as income in the taxable year when received, but are to be credited as an addition to the balance in the reserve for bad debts. The petitioner maintains that its accounting for the recoveries as income for the year of their receipt was proper.

Under section 41, I. R. C., the net income of petitioner is required to be computed in accordance with its "method of accounting regularly employed." Admittedly the petitioner regularly employed such a method and so reported its income. The suggested change of that method is therefore permissible, under that section, *only* if that system of the petitioner did not "clearly reflect  *  *  *  [its] income." See *Huntington Securities Corporation* v. *Busey*, 112 Fed. (2d) 368.

Since 1925 petitioner has regularly employed a method of accounting upon the basis of which its Federal income tax returns were made. Under that system it has uniformly followed the practice of including in gross income bad debt recoveries instead of crediting them to the reserve in the respective years in which the recoveries were made. This action was not questioned by the respondent until the taxable year, 1939. Respondent does not point even now to any distortion of petitioner's income caused by that practice. In fact, it is difficult to believe that, if the only receipts of petitioner during the taxable year had been bad debt recoveries, respondent would take the position that those recoveries were not to be returned as income, but merely added to the bad debt reserve. But here, the all important question is not net income, but gross income. It is upon the determination of that fact, alone, that the legal characterization of

petitioner as a holding company rests. So, respondent proposes to change the petitioner's method of accounting and reporting its bad debt recoveries for 1939. Based wholly upon a computation of gross income resulting from that change, he has determined a deficiency in taxes of $22,918.95, together with a penaltiy of $5,729.74.

The petitioner relies upon Regulations 103, applicable in the taxable year, secs. 19.42–1 and 19.23 (k)–1 (d), (b), and (a). Those provisions are not expressly limited in their application to bad debt recoveries by those on the specific bad debt charge-off system. In so far as they purport to treat bad debt recoveries, those provisions have remained substantially unchanged since those appearing in the regulations issued under the Revenue Act of 1921, which first recognized the reserve system of charge-off.[2] But respondent argues that these regulations are inferentially restricted in their application to those on the specific bad debt charge-off system. Thus he argues that the bad debts the recoveries of which are here in question had not been charged off within the purview of those regulations and are therefore not required by the regulations to be reported as income in the taxable year when received. The general rule, however, is well established that, except where otherwise authorized, income is to be reported for the year when realized. *Burnet* v. *Sanford & Brooks*, 282 U. S. 359. But the effect of respondent's proposed treatment of the recoveries here is to include in income in the year of receipt only part of the recoveries to the extent of $10,992.86 and the balance, $14,517.42, in income for succeeding years by the reduction or elimination of deductions for additions to the reserve for those years. Thus, even if respondent is right about his construction of the cited provisions of Regulations 103, that regulation neither condemns petitioner's method nor authorizes the use of respondent's suggested treatment. Upon what authority does he rely? He points to no law or regulation. It is true that Regulations 111,[3] promulgated under the Revenue Act of 1942, and the Report of the Senate Committee on Finance accompanying that act,[4] approve adding such recoveries to the reserve for bad debts instead of reporting them as income when received. But even respondent does not contend that these regulations are applicable retroactively to the taxable year. See *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90; *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110. He completely relies upon an office ruling, I. T. 1825, issued in 1923.[5] See *Bedford Mills, Inc.* v. *United States*, 2 Fed. Supp. 769; certiorari denied, 290 U. S. 655; *Helvering* v. *New York Trust Co.*, 292 U. S. 455.

---

[2] Art. 151, Regulations 62, 65, and 69; art. 191, Regulations 74 and 77; art. 23 (k)–1, Regulations 86, 94, and 101; and sec. 19.23 (k)–1, Regulations 103.

[3] Regulations 111, sec. 29.22 (b) (12)–1 (a) (1).

[4] Senate Finance Committee, S. Rept. No. 1631. 77th Cong., 2d sess., C. B. 1942–2, p. 568.

[5] I. T. 1825, C. B. II–2, July–Dec. 1923 (p. 144).

The Supreme Court, in considering the authoritative dignity of such rulings, said in the last cited case: "* * * they 'have none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of the law.'" Respondent did not even see fit to incorporate the provisions of this ruling in his regulations until Regulations 111 were issued under the Revenue Act of 1942, as mentioned above. There is nothing in this record to indicate that, at least prior to the Revenue Act of 1942 and the promulgation of his Regulations 111 thereunder, respondent ever treated I. T. 1825, *supra*, as expressing the only proper accounting method for treating bad debt recoveries to a taxpayer on the reserve system. Indeed, the only evidence here is that he did not. The petitioner employed another method consistently, and without question by the respondent, for the 14 years preceding the taxable year. There are reputable accounting authorities supporting the correctness of each method. Both have been approved. Accountants' Handbook, Second Edition, edited by W. A. Paton, Ph. D., C. P. A., p. 254, supports petitioner's method. Also see *Virginia-Lincoln Furniture Corporation* v. *Commissioner*, 56 Fed. (2d) 1028. Montgomery in his Handbook, 1940–1941 Edition, vol. 1, p. 624, supports that suggested by respondent, though in his 1932 Edition, p. 406, he apparently did not go that far.

Confronted by this record, therefore, we can not say that petitioner's "method of accounting regularly employed" in 1939, the taxable year, did not "clearly reflect * * * [its] income." We think that it did. Respondent therefore erred in changing the method for the taxable year. Consequently, the petitioner was not subject to a personal holding company tax for 1939. The deficiency thus falls, and with it the penalty.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

BLACK and TURNER, *JJ.*, dissent.