## BOYD-RICHARDSON COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2238. Promulgated September 11, 1945.

*Thomas F. Leonard, C. P. A.*, for the petitioner.
*Roy C. Hormberg, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of $1,362.68 in excess profits tax for the fiscal year ended January 31, 1941. The only issue is whether he erred in disallowing an exclusion of $5,378.19 under section 711 (a) (1) (E) of the Internal Revenue Code in computing excess profits net income. The facts have been stipulated.

The petitioner is a corporation. It made its Federal tax reports upon an accrual basis for fiscal years ending January 31. It consistently used a reserve method for bad debts, with the permission of and without change by the Commissioner.

The deduction for bad debts which it took on its tax returns was for each year the difference between the addition to its reserve and the amount recovered during the year on bad debts charged against the reserve in prior years. Its deduction for the taxable year was computed as follows:

| | |
|---|---|
| Gross addition to reserve for bad debts | $12,685.67 |
| Less—Recoveries on debts which had been written off in taxable years beginning prior to January 1, 1940 | 5,378.19 |
| Net deduction on return | 7,307.48 |

The Commissioner accepted this computation for income tax purposes.

The petitioner, in reporting its excess profits tax net income, excluded from normal tax net income $5,378.19 representing recoveries on bad debts. The Commissioner, in determining the deficiency in excess profits tax, restored the amount to income.

Section 711 (a) (1) (E) is as follows:

SEC. 711. EXCESS PROFITS NET INCOME.

(a) TAXABLE YEARS BEGINNING AFTER DECEMBER 31, 1939.—The excess profits net income for any taxable year beginning after December 31, 1939, shall be the

normal-tax net income, as defined in section 13 (a) (2), for such year except that the following adjustments shall be made:

(1) EXCESS PROFITS CREDIT COMPUTED UNDER INCOME CREDIT.—If the excess profits credit is computed under section 713, the adjustments shall be as follows:

\* \* \* \* \* \* \*

(E) Recoveries of Bad Debts.—There shall be excluded income attributable to the recovery of a bad debt if a deduction with reference to such debt was allowable from gross income for any taxable year beginning prior to January 1, 1940.

The intent of Congress is not ambiguous. It did not want excess profits net income to include recoveries on bad debts, since they had no real relation to the operations of the current year but represented earnings of a previous year, for which there was no excess profits tax.

The respondent summarizes his argument as follows:

It is respectfully submitted that: (1) Petitioner's bad debt recoveries in the sum of $5,378.19 have not been included in gross income during the taxable year; (2) said recoveries were not deducted by petitioner from gross income in any prior taxable year; (3) petitioner has not consistently included in gross income recoveries of bad debts; and (4) petitioner has credited to the reserve such recoveries of bad debts. Hence, petitioner is not entitled to exclude the bad debt recoveries in computing its excess-profits net income as provided in section 711 (a) (1) (E) of the Internal Revenue Code.

Much of this argument has been rejected by this Court in the case of *J. F. Johnson Lumber Co.*, 3 T. C. 1160, upon which the petitioner relies. The Commissioner there contended that no taxpayer using a reserve method for bad debts could exclude recoveries of bad debts under section 711 (a) (1) (E). The Court held that the section applied as well to taxpayers using a reserve system as it did to those deducting specific bad debts and that the recoveries were of debts with reference to which a deduction from gross income had been allowable for a prior year within the meaning of (E).

The practice of the Johnson Co. had been to deduct from income for each year a reasonable addition to a reserve. Then, as actual debts were deemed worthless, they were charged against the reserve. If a recovery was made on any debt previously charged off, the amount of the recovery was taken directly into income and was not reflected at all in the reserve account. The practice of the present petitioner was not materially different from that of the Johnson Co. and had exactly the same effect for income tax purposes in each year. The difference is that the Johnson Co. accounted for its recoveries separately from its reserve, i. e., reported them as income, did not credit them to its reserve, and deducted the full amount of the addition to its reserve, whereas the petitioner combined the recoveries with its reserve, i. e., it credited the recoveries to the reserve, did not report them directly as income, but reduced the deduction which it otherwise would have taken by the amount of the recoveries. Net income would be exactly the same in each year regardless of which method were used,

and there is no reason to suppose that Congress intended excess profits net income and the resulting tax to be different, depending upon the choice of method used.

Congress has not said that the excess profits net income shall be different in these two cases. In each case there were during the taxable year recoveries of bad debts with respect to which a deduction had been allowed for a taxable year beginning prior to January 1, 1940. In each case the net income was larger by the exact amount of the recoveries than it would have been had there been no recoveries. In the one case the recovery went directly into gross income, while in the other case, although it did not go into gross income, nevertheless, it served to increase net income by reducing the deduction which otherwise would have been proper. Therefore, in both cases it can be said that there was "income attributable to the recovery of a bad debt." The statute provides that income attributable to the recovery of such a bad debt shall be excluded. It does not require that the recovery be a part of gross income or specify how it gets into income. It simply provides that income attributable to the recovery shall be excluded. Therefore, in this case, as in the *Johnson* case, the result is the same and the recoveries of bad debts must be excluded from excess profits net income.

The *Ohio Loan & Discount Co.*, 3 T. C. 849, was cited in the *Johnson* case, but the *Johnson* decision was sound even without any support from the *Ohio Loan* case. The question involved in the *Ohio Loan* case was whether that corporation was a personal holding company within the meaning of section 501. Section 711 was in no way involved there. We may not be deterred here from carrying out the intention of Congress as expressed in section 711 by what was said in the *Ohio Loan* case in our efforts to apply another wholly unrelated section to another set of facts.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

OPPER, J., dissenting: My disagreement with the opinion in this case stems largely from the statement that "Net income would be exactly the same in each year regardless of which method were used, [that is, reporting as gross income or crediting to the reserve] and there is no reason to suppose that Congress intended excess profits net income and the resulting tax to be different, depending upon the choice of method used."

The two methods in their accounting consequences are widely divergent. Only by accident will the resulting income be the same. For example, had the recoveries in the present year exceeded the charge-offs, the difference between the two would not, under petitioner's system, be

gross income. The amount would go into the reserve and would merely swell it to a size which would have to be taken into account[1] in making additions in future years—a result which could not occur where all recoveries go into gross income. See *Ohio Loan & Discount Co.*, 3 T. C. 849. It appears to me to be obvious that, for purposes of determining excess profits for a given year, the system of showing all recoveries in gross income and the method of the present petitioner of crediting them to a reserve are radically different and lead to different taxation.

As a matter of fact, a strict analysis of petitioner's method demonstrates how tenuous is the relationship between these recoveries and even the most liberal reading of the statutory reference to "income attributable to the recovery of a bad debt." Crediting these recoveries to the bad debt reserve, which is what petitioner's system was designed to accomplish, could not possibly affect its current income. That is the purpose of a bad debt reserve. The short cut adopted, which appeared to take the form of setting off the recoveries against a proposed excessive addition to the reserve, need not obscure the true operation. The reserve was actually increased by the amount of the recoveries. It was then of such a size that a "reasonable addition" to it, for which alone the deduction is permitted,[2] was no more than the actual amount which petitioner deducted from income. To say that the recoveries became income because they reduced this addition is comparable to saying that a decrease in bad debt charge-offs is income because it, likewise, reduces the amount required to constitute a reasonable addition.[3]

If taxpayers computing their income as petitioner does are permitted to deduct from excess profits net income the recoveries of debts charged off to a reserve in base period years, even though such debts are not included in gross income, it seems to me inescapable that their excess profits tax liability must be distorted. Yet that is how the opinion reads the Congressional intent.

That, to my mind, is precisely the opposite of what the Tax Court held in *J. F. Johnson Lumber Co.*, 3 T. C. 1160. There we took occasion to note that "The Commissioner has disregarded the fact

---

[1] "* * * But the effect of respondent's proposed treatment of the recoveries here is to include in income in the year of receipt only part of the recoveries to the extent of $10,992.86 and the balance, $14,517.42, in income for succeeding years by the reduction or elimination of deductions for additions to the reserve for those years. * * *" *Ohio Loan & Discount Co.*, 3 T. C. 849, 852.

[2] Internal Revenue Code, sec. 23 (k) (1).

[3] See, e. g., McMullen, Federal Income Tax Accounting (1939), p. 177:

"If a taxpayer using the reserve method collects debts previously charged against the reserve, the amount collected should be credited to the reserve for bad debts, and need not be reported as income. However, statutory net income *will be indirectly affected* as the amount of the reasonable provision allowable as a deduction will be reduced." (Emphasis added.)

that the taxpayer has, in computing its net income for income tax purposes, always included bad debt recoveries in its gross income and has never credited them to the bad debt reserve." The Commissioner there was making the same argument the opinion accepts here: "* * * at the hearing his position was that it makes no difference whether the recoveries were 'charged' to the reserve or to the income account, because, since petitioner used the reserve method, its duty was to 'charge' the recoveries to the reserve." It was rejected wholly on the authority of *Ohio Loan & Discount Co., supra.* If the result would have been the same under either system, the entire basis of decision in the *Johnson Lumber Co.* case was redundant. On the contrary, however, its true holding can be gathered from its language. "* * * Bad debt recoveries of a taxpayer using the reserve method may properly be accounted for regularly and consistently as gross income for the purpose of computing taxable net income. Since that doctrine is established by the *Ohio Loan* decision, it inevitably follows that such gross income, if it is attributable to bad debts which were deducted prior to 1940, shall, for the purpose of excess-profits tax, by virtue of section 711 (a) (1) (E), be excluded from excess profits net income, even though the taxpayer uses the reserve method of accounting for bad debts. Regulations 109, section 30.711 (a)–2, in so far as it is contrary, is disapproved."

Respondent so understood the *Johnson* case, and amended his regulations to conform to it but to exclude the situation of the present petitioner. T. D. 5421, 1944 I. R. B. No. 24, p. 10. As I have said, this seems to me a reasonable, and, in fact, necessary, interpretation of the statute, and I think it should be followed.