RALPHS-PUGH COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5597. Promulgated July 2, 1946.

*Herbert F. Baker*, *C. P. A.*, and *A. D. Schaffer*, *Esq.*, for the petitioner.

*T. M. Mather*, *Esq.*, for the respondent.

328

OPINION.

HARRON, *Judge: Issue 1.*—The main issue in this case is the amount of excess profits credit based upon invested capital to which petitioner is entitled in computing its excess profits tax liability for the fiscal year ended May 31, 1942. This, in turn, requires the ascertainment of petitioner's equity invested capital under section 718 (a) (2) of the Internal Revenue Code,[1] and specifically the ascertainment of the sub-

---

[1] SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

\* \* \* \* \* \* \*

(2) Property Paid In.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the property was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913. If the property was disposed of before March 1, 1913, its basis shall be considered to be its fair market value at the time paid in. If the unadjusted basis of the property is a substituted basis, such basis shall be adjusted, with respect to the period before the property was paid in, by an amount equal to the adjustments proper under section 115 (l) for determining earnings and profits;

stituted basis of the so-called "factory contract rights" around which the present dispute is centered.

On April 1, 1921, a partnership of the same name as petitioner transferred all of its properties to petitioner in exchange for all of petitioner's stock in a tax-free transaction to which section 202 (c) (3) of the Revenue Act of 1921 was applicable. Included among these properties were the factory contract rights in controversy. Since no gain or loss was recognized on the exchange, the basis of the properties in the hands of petitioner was the same as the basis of the properties in the hands of the partnership. Sec. 113 (a) (8). Under section 718 (a) (2), property previously paid in for stock of a corporation is to be included in the equity invested capital of the corporation for excess profits tax purposes in an amount equal to its unadjusted basis for determining loss upon sale or exchange. However, if this unadjusted basis is a substituted basis, as is the case here, where petitioner takes the partnership's basis, such unadjusted basis must be adjusted with respect to the period before the property was paid in. Hence, petitioner was entitled to include in its equity invested capital an amount equal to the partnership's adjusted cost basis of the factory contract rights at the time of the tax-free exchange in 1921.

These factory contract rights represented contracts which had been entered into between the partnership and various manufacturers of rubber products during the years 1911 to 1921. The contracts gave the partnership the exclusive right to sell the manufacturers' products on a favorable commission basis in certain broad territorial areas. The contracts were both written and oral. Some were long term contracts, others were short term. Many of the contracts were terminable at the will of either the manufacturer or the partnership.

The partnership did not pay any money to the manufacturers for these exclusive sales contracts. The cost basis of the partnership which petitioner seeks to ascribe to these contracts consists solely of traveling, entertainment, hotel, and food expenses incurred by a member of the partnership in traveling two or three times a year from California to the eastern part of the United States where the manufacturers were situated to personally secure the contracts. The partnership treated these expenditures as business expenses in the years incurred and paid and took proper deductions for them in the income tax returns which it was required to file during most of this period. However, petitioner contends that these amounts were properly capital expenditures and that under section 734 [2] petitioner rightfully can

---

[2] Section 734 (b) provides in part:

(b) CIRCUMSTANCES OF ADJUSTMENT.—

(1) If—

(A) in determining at any time the tax of a taxpayer under this subchapter an item affecting the determination of the excess profits credit is treated in a manner

treat them as such for purposes of ascertaining its equity invested capital, opening up for present adjustment, as provided in section 734, the income tax liability of the predecessor partnership for erroneously deducting the expenditures as business expenses in the years incurred and paid. The question presented for our decision, therefore, is whether, under the circumstances disclosed here, the factory contract rights had a cost basis in the hands of the partnership at the time of the tax-free exchange in 1921 equal to the total or any portion of the amount of the traveling, entertainment, food, and lodging expenses incurred by a member of the partnership in traveling from the partnership's principal place of business to personally secure the contracts.

Petitioner's contention that the total amount of the traveling expenses, $57,750, constitutes "cost," in the hands of the partnership, of the exclusive sales contracts, means that petitioner is now taking the view that the traveling expenses should be or should have been capitalized, or that such expenses should be or should have been treated as capital expenditures. Traveling expenses, including the entire amount expended for meals and lodging while away from home in the pursuit of a trade or business, of course, are treated under the revenue acts and the Internal Revenue Code as business expense. Ordinarily such business expense is treated by taxpayers and by the respondent as expense to be deducted in the year in which paid or incurred. It is unusual for a taxpayer to contend that such expense is a capital expense. Petitioner has not cited any case where traveling expense has been held to be capital expense. Whether or not traveling expense is in some instance capital expense, depending upon the facts, is a question which need not be decided in this case. Assuming, *arguendo*, that the traveling expense in question could be treated as capital expense, that assumption does not dispose of the question at issue, as is shown hereinafter.

If the travel expense in question were treated as a capital expense, such capital expense would be subject to amortization over the term of a contract, just as cost of an exclusive franchise or contract to sell would have to be amortized over the definite term of the contract. *Commis-*

inconsistent with the treatment accorded such item in the determination of the income-tax liability of such taxpayer or a predecessor for a prior taxable year or years, and

   (B) the treatment of such item in the prior taxable year or years consistently with the determination under this subchapter would effect an increase or decrease in the amount of the income taxes previously determined for such taxable year or years, and

   (C) on the date of such determination of the tax under this subchapter correction of the effect of the inconsistent treatment in any one or more of the prior taxable years is prevented (except for the provisions of section 3801) by the operation of any law or rule of law (other than section 3761, relating to compromises),

then the correction shall be made by an adjustment under this section. If in a subsequent determination of the tax under this subchapter for such taxable year such inconsistent treatment is not adopted, then the correction shall not be made in connection with such subsequent determination.

*sioner* v. *Pittsburgh Athletic Co.*, 72 Fed. (2d) 883. Many of the contracts here involved were terminable at the will of the manufacturers. The record is wholly devoid of any evidence to show what part of the $57,750 of traveling expenses was spent to secure contracts which were terminable by the manufacturers prior to the time the contracts were acquired by petitioner in 1921. The cost, if any, of contracts terminable at will had to be deducted by the partnership in the years in which the expenses of acquiring such contracts were paid or incurred. *Commissioner* v. *Pittsburgh Athletic Co., supra.* Thus, petitioner has not shown what part of the total $57,750 was allocable to the contracts which could be terminated at will, and, lacking evidence on this point, it can not be found as a fact what amount of the traveling expenses was paid or incurred to secure contracts which were not terminable at will. Thus, there is a failure of proof on the point of the amount of the travel expense which was a capital expense according to petitioner's contention. Because of this failure of proof, it is impossible to reach the question presented by petitioner under its theory, namely, whether or not traveling expense was a capital expense and, as such, constituted "cost" of the contracts: See *Houston Natural Gas Corporation* v. *Commissioner*, 90 Fed. (2d) 814, 817, on the matter of failure of proof.

Although we find that it is unnecessary to determine whether or not petitioner's present theory that these traveling expenses were capital expenses is a sound theory, it should be pointed out that, even if we were to consider such question, we would have to recognize that, in the years in which income tax returns were filed by the partnership, the partnership considered it proper to treat the traveling expenses as currently deductible business expense, and that the partnership considered such treatment as one which properly reflected the partnership's true income. The respondent, in those years, took the same view in allowing the deductions. Thus, over a period of years these particular traveling expenses were not considered by either the partnership or the Commissioner as being anything other than currently deductible business expenses. To support a contention that these traveling expenses were capital expenses rather than business expenses, the petitioner would have to introduce more evidence in this case than it has done to show that the expenses were of a capital nature. Upon such facts as are before us in the present record, we would find it difficult to hold that the traveling expenses in question were anything other than business expense. *Duesenberg, Inc., of Delaware* v. *Commissioner*, 84 Fed. (2d) 921.

Property paid in for petitioner's stock is to be included in equity invested capital. Such property shall be included in an amount equal to its basis for determining loss upon sale or exchange. Sec. 718 (a), I. R. C. For petitioner's purposes here the "basis" of the contracts

in question must be the adjusted cost thereof to the partnership. If the contracts had no "cost," or basis, to the partnership, there is nothing to be included in petitioner's equity invested capital. Petitioner contends that the contracts in question had substantial value. It may be that they did have substantial value. But petitioner's equity invested capital is not based on the value of the contracts transferred to it, but only on the cost basis of the contracts to the partnership, and, under the limited evidence before us, we are unable to find that the contracts cost the partnership any definite amount.

Largely for failure of proof, it is held that no part of the $57,750 of traveling expenses incurred by the partnership in obtaining the factory contract rights was includible in petitioner's equity invested capital.

*Issue 2.*—The question presented under this issue is whether income attributable to the recovery by petitioner during the fiscal year ended May 31, 1942, of a bad debt in the amount of $4.55 was properly includible in petitioner's excess profits net income. For the fiscal year ended May 31, 1942, the petitioner was on the reserve method of accounting for bad debts for Federal income tax purposes. Prior to that taxable year petitioner used a method of accounting for bad debts whereby petitioner deducted specific bad debt items. There is nothing in the record to show in which year the $4.55 bad debt had been allowable as a deduction.

Section 711 (a) (2) (H) of the Internal Revenue Code provides that there shall be excluded from excess profits net income "the income attributable to the recovery of a bad debt if a deduction with reference to such debt was allowable from gross income for any taxable year beginning prior to January 1, 1940."

At one time respondent refused to apply this section to a taxpayer using the reserve method of treating bad debts. Regulations 109, sec. 30.711 (a)–2. In *J. F. Johnson Lumber Co.*, 3 T. C. 1160, and *Boyd-Richardson Co.*, 5 T. C. 695, we disapproved of these regulations as contrary to the statute. Accordingly, by T. D. 5421, 1944 C. B. 797, and T. D. 5496, Feb. 27, 1946, respondent amended his regulations to make the section applicable in the case of a taxpayer using the reserve method of treating bad debts, whether the recoveries of bad debts were credited to the reserve for bad debts or were reported as gross income. Hence, the fact that the petitioner was on the reserve method of treating bad debts could not preclude the applicability of section 711 (a) (2) (H).

Nevertheless, petitioner is not entitled to have the $4.55 of income attributable to the recovery of the bad debt excluded from its excess profits net income. As we said in *Boyd-Richardson, supra,* section 711 (a) (1) (E), which is identical to section 711 (a) (2) (H),

reveals that Congress did not want excess profits net income to include recoveries on bad debts, since such recoveries had no real relation to the operations of the current year but represented earnings of a previous year for which there was no excess profits tax. There is nothing in the record to show that the $4.55 of bad debt here sought to be excluded was not allowable as a bad debt deduction for a taxable year beginning after January 1, 1940, when there was an excess profits tax. Accordingly, petitioner might have received an excess profits tax benefit by the deduction of the $4.55 bad debt and would not be entitled to the exclusion of the recovery now.

Respondent has specifically raised on brief the point that petitioner has not shown that the bad debt was allowable for a taxable year beginning prior to January 1, 1940. Since petitioner has failed to prove otherwise, respondent's determination must be sustained. *Welch* v. *Helvering*, 290 U. S. 111. The fact that the Commissioner assigned the unsound reason in his deficiency letter that the bad debt was includible in petitioner's excess profits income because petitioner was on the reserve method of treating bad debts is immaterial. *Helvering* v. *Gowran*, 302 U. S. 238; *James P. Gossett*, 22 B. T. A. 1279; affd., 59 Fed. (2d) 365.

*Decision will be entered for respondent.*