AMERICAN RADIO TELEPHONE COMPANY, A CORPORATION IN PROCESS OF DISSOLUTION BY CASSIUS E. GATES, LIQUIDATING TRUSTEE THEREOF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14308.    Promulgated February 3, 1949.

*Harry Henke, Jr., Esq.,* and *Frank L. Mechem, Esq.,* for the petitioner.

*Douglas L. Barnes, Esq.,* for the respondent.

144

BLACK, *Judge*: Petitioner, in the computation of its excess profits tax, is entitled to an excess profits credit based on invested capital or based on earnings, whichever is greater. See sec. 712, I. R. C. In its excess profits tax returns for 1943 and 1944 petitioner claimed excess profits credit based on an initial capital investment of $100,000 and computed its excess profits credit under section 714 of the Internal Revenue Code. In its 1945 return it based its credit, under protest, on an initial investment of $30,000.

In its brief petitioner, after referring to the appraisal made in 1924 by the General Appraisal Co. referred to in our findings of fact, says of that appraisal:

That appraisal included the following items, together with their current cost at that time:

1 De Forest radio telephone, type O, Series 172, 60 cycles, alternating current supply, manufactured by the Forest Radio Telephone and Telegraph Company, New York City_____ $475.00

1 from 1000 to 1500 watt radio telephone and telegraph transmitter, Westinghouse type, with Westinghouse generator set, battery circuit, etc., complete in every detail, manufactured by the Radium X-Ray Company, Seattle, Washington, installed_____ 75,000.00

The total of those items of radio equipment is $75,475.00. This sum, we submit, is the basis of that property and petitioner is, in consequence, entitled to avail itself of that sum in computing its invested capital for excess profits tax purposes.

As disclosed by our findings of fact, Olmstead and Hubbard were the original owners of this radio equipment and they paid it in to the corporation (petitioner) in consideration of the issuance to them of petitioner's stock of 1,000 shares (par value of $100 per share). Petitioner concedes that its basis of cost for the property paid in is the basis of cost to the transferors. Petitioner does not claim that it has any books or records to prove what this radio equipment cost Olmstead and Hubbard. It relies largely for its proof of cost on the appraisal made in 1924 for Olmstead by the General Appraisal Co. for fire insurance purposes on property situated in his private residence.

The Commissioner, in his determination of the excess profits tax deficiencies, has determined that petitioner has failed to establish the basis of property paid in for stock and that hence there is no basis for the allowance of excess profits credit based on invested capital. In his determination of the deficiencies respondent has allowed petitioner an excess profits credit of $3,011.54 based on income computed in accordance with section 713 (f) of the code.

Petitioner does not contest the correctness of respondent's compu-

tation of the excess profits credit if the income method is to be used. Petitioner does insist, however, that it has made sufficient proof of its original invested capital to justify the use of that method in determining its excess profits credit.   The applicable section of the code is printed in the margin.[1]   Inasmuch as it was Olmstead and Hubbard who transferred the property in question to petitioner and received its shares of stock in equal proportion, it was their cost basis which would determine petitioner's cost basis and, hence, the amount of equity invested capital it would be entitled to use.   See *Ralphs-Pugh Co.*, 7 T. C. 325.   In that case, among other things, we said:

> * * *   If the contracts had no "cost," or basis, to the partnership, there is nothing to be included in petitioner's equity invested capital.   Petitioner contends that the contracts in question had substantial value.   It may be that they did have substantial value.   But petitioner's equity invested capital is not based on the value of the contracts transferred to it, but only on the cost basis of the contracts to the partnership, and, under the limited evidence before us, we are unable to find that the contracts cost the partnership any definite amount.

We thereupon held against the taxpayer in that case because of failure of proof.

Unlike the *Ralphs-Pugh Co.* case, *supra*, where we were not able to make any finding that the property paid in by the incorporators cost them anything, in the instant case we are able to make a finding that the property which Olmstead and Hubbard paid in to petitioner for its 1,000 shares of stock had a cost basis to them of not less than $10,000 and not more than $15,000.   This finding, however, does not help petitioner, because we would have to find that the property in question had a cost basis to Olmstead and Hubbard of something around $40,000 before it would do petitioner any good.   Such a finding we are unable to make from the record which we have before us. As we have already stated, petitioner concedes that it has no books or records which show the cost of this property to Olmstead and Hubbard.   It relies largely on an appraisal made in 1924 by the General Appraisal Co. of Seattle for fire insurance purposes.   Petitioner's argument in substance is that, because this appraisal was based on

---

[1] SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital.   Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange.   If the property was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913.   * * *

replacement costs at the time it was made, it should be accepted by us as satisfactory evidence of what the property cost Olmstead and Hubbard near the time when the appraisal was made. If this appraisal were all the evidence that we have, we would have to decide whether it was sufficient to overcome the presumptive correctness of respondent's determination. But it is by no means all the evidence that we have. Respondent has offered affirmative evidence that the property could not possibly have cost Olmstead and Hubbard anything like the figures which the appraisal names.

Roy Olmstead was called as a witness by respondent. The substance of his testimony was that he was one of the original incorporators of petitioner and was associated with Alfred Hubbard in its incorporation. Hubbard did the purchasing of the radio equipment and Olmstead supplied the money. He stated that it would be difficult for him to say how much money he furnished Hubbard with which to purchase and install the radio equipment, but he would say the aggregate amount would be between $10,000 and maybe as high as $15,000. The testimony of other witnesses called by respondent was to the effect that the property which Olmstead and Hubbard transferred to petitioner in consideration of the issuance to them of its capital stock could not have cost them in excess of $15,000. Some of these witnesses impressed us as being well qualified to testify as to the cost of radio equipment. We are, therefore, unable to accept the appraisal which petitioner has introduced in evidence as proof of the fact that the property transferred by Olmstead and Hubbard to petitioner had a cost basis to them of $75,475, as petitioner claims.

Not only has petitioner failed to overcome the presumptive correctness of respondent's determination, but respondent has offered evidence which convinces us that the cost basis of the property in question to Olmstead and Hubbard, and hence to petitioner, was not in excess of $15,000. Petitioner is, therefore, not entitled in the taxable years to an excess profits credit based on invested capital which exceeds the credit allowed by respondent based on earnings.

*Decision will be entered for the respondent.*