HOTEL KINGKADE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17302.    Promulgated April 8, 1949.

*John E. Marshall, Esq.*, for the petitioner.
*John P. Higgins, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: On brief, petitioner contends that the lease under which it operated required it to operate first-class modern hotels, which it could not do with worn-out equipment, and that the amounts

in controversy constitute ordinary and necessary business expenses under the rationale of *Southern Ry. Co.* v. *Commissioner*, 74 Fed. (2d) 887, and *Illinois Central R. Co.* v. *Commissioner*, 90 Fed. (2d) 458.

In the *Southern Ry. Co.* case the court, in discussing a conclusion of the Board of Tax Appeals that deductions for repairs for which an undermaintenance allowance was made by the Director of Railroads should be disallowed, said that:

* * * It would be inconvenient, if not impractical, in railroad accounting to charge every item having a life of more than one year to capital account * * * and in a great business where thousands of similar replacement or repair items are involved nothing would be gained by such a system of accounting, since, on the law of averages, expenditures for such items during a given year would substantially balance the depreciation for that year. * * * Expenditures for repairs and replacements, therefore, when no greater than necessary to maintain the property of the railroad at the normal level of maintenance, merely counterbalance depreciation and are deductible from income, just as depreciation is deductible, in that they represent a necessary expense in the earning of income. * * * So long as the expenditure for this purpose does not exceed that which is necessary to preserve the normal level of maintenance, it is properly treated as an ordinary and necessary expense of the operation of the business, and is deductible from income as such.

In the *Illinois Central R. Co.* case the taxpayer's subsidiary, as lessee, was required to repair and replace, at its expense, the leased property during the long terms of the leases, so that the property would at all times be in as good condition as when the leases were entered into. The lessor was to reimburse the lessee for betterments to the leased property. Amounts expended for locomotives and freight cars to replace like equipment which had been retired were allowed as a business expense.

We find no justification for extending the rule applied in the cases relied upon by petitioner to the facts here. There is no showing here that it would be inconvenient, if not impracticable, to charge the cost of the property to capital and obtain recovery through yearly deductions for exhaustion, as is generally done in the case of depreciable assets having a useful life in excess of one year. Neither can we say, from the proof made, that the expenditures did nothing more than maintain the property, as a whole, in normal condition, and merely counterbalanced depreciation. The petitioner, according to the terms of the original lease under which, in general, it operated until 1920, was granted "reasonable use" of the building (hotel equipment and furniture and fixtures were not furnished by the lessor under the original lease) and, accordingly, petitioner was under no obligation to surrender the property in as good condition as when taking possession.

The terms of the original lease, executed in 1910 between the then owner of the Kingkade Hotel building and two individuals, were in general, to control the rights of the owning company and petitioner respecting the Kingkade Hotel and Bristol Hotel. None of the amounts involved herein are shown to have been spent in the operation of the Ewell Hotel. The original lease was for the unfurnished Kingkade Hotel building and required the lessees, as above seen, to surrender the premises at the end of the term in as good condition as reasonable use thereof would permit, any improvements to the premises to be at the expense of the lessees. The lessor was required to keep the roof in proper repair; therefore that item, $1,737.20, is eliminated at once. In other respects, the lessees were to make the repairs at their expense to keep the building in first-class condition, subject to reasonable use. The hotel furnishings and equipment were acquired by the owning company in about 1914. The Bristol Hotel was acquired by the owning company, completely furnished, in 1923. Fixtures placed in the Kingkade Hotel by the original lessees were subject to removal by them upon the termination of the lease, if it could be done without injury to the building, and the lease contained no clear provision respecting the condition in which the lessees were to maintain it, for, as above noted, it provided that the lessees should surrender the premises at the end of the term "in as good condition as the reasonable use thereof will permit," but also provided that except for the roof, the building and appurtenances should be kept by the lessees in first-class condition at their own expense.

Certainly we find no requirement under the arrangement petitioner had for operating the hotel properties to replace, repair, or otherwise maintain the furnishings. Moreover, even assuming an obligation on the part of petitioner to replace and maintain hotel equipment and furnishings, we are not from the record made able to say that amounts involved herein as replacement costs replaced such property in the buildings when petitioner took over operation of the hotels. For aught we know from the record, it replaced additional property acquired by petitioner. It also appears that $650, the cost of removing an old hot water tank, was a cost which should have been charged as a part of cost of the equipment which replaced it.

Petitioner appears to assume that the costs here involved were necessary to comply with a term of the lease requiring the lessee to conduct a modern and first-class hotel in the respective buildings. The provision seems to relate to management, rather than to furnishings and equipment. In any event, the hotels were furnished when petitioner commenced to operate them, and whether the furnishings then in the hotels were sufficient to conduct a first-class, modern hotel is not shown by evidence. No evidence was adduced to show what was re-

quired in the way of furnishings and equipment in order to maintain these hotels in first-class condition—assuming that the petitioner was required so to do.

In *Manger Hotel Corporation*, 10 T. C. 520, the taxpayer leased a furnished hotel for a term of 21 years under an agreement obligating it to maintain and replace at its own expense all furnishings, fixtures, and equipment then or thereafter located or used in connection with the leased premises and giving it the right to install additional equipment, any such property to be the property of the lessee and subject to its removal. The question was whether the cost of bedding, carpets, rugs, kitchen equipment, curtains, draperies, and furniture and fixtures should be capitalized, subject to depreciation, as determined by the Commissioner, or deducted as ordinary and necessary expenses. The facts did not show whether the equipment represented replacements of leased property or additional equipment, property of the lessee. We held that the cost of any additional equipment having a useful life substantially in excess of one year must be capitalized and recovered by allowances for depreciation instead of deductions for business expenses. Concerning any of the property purchased to replace leased equipment, absent proof that similar expenditures were made in substantially the same amounts in each of the prior years of operation under the lease, none of which was capitalized, that the items of property had relatively short lives in the hotel, and that similar expenditures might be expected in subsequent years, we declined to disturb the action of the Commissioner in treating the amounts as capital expenditures.

Here, there is proof of similar expenditures in prior years and that the costs were charged to expense, but no showing was made that the life of the equipment was not substantially in excess of one year, or that the equipment replaced furnishings, etc., in the properties when taken over for operation or was additional equipment. Furthermore, as already pointed out, there is no proof that petitioner was obligated to repair or replace leased equipment.

The petitioner cites *Ohio Loan & Discount Co.*, 3 T. C. 849, as authority for according the expenditures the same treatment the respondent gave similar expenditures in prior years. In that case the taxpayer had for a period of 15 years used the reserve system of reporting bad debts and reported recoveries of bad debts as gross income instead of a credit to the balance in the reserve account. The amount included in gross income in the taxable year as recoveries from bad debts was eliminated by the Commissioner and added to the balance in the reserve account. He disallowed a portion thereof and as a result more than 80 per cent of the petitioner's gross income was personal holding income, with the result that petitioner was classi-

fied as a personal holding company and subject to the surtax. Thus, whether or not the taxpayer was a personal holding company depended upon the change made by the Commissioner in the taxpayer's consistent method of accounting. The regulations did not condemn the procedure followed by the taxpayer or approve the use of the Commissioner's method. Under the facts present in the case, we held that the method of accounting employed by the taxpayer clearly reflected its income.

In the *Ohio Loan* case the controlling question was gross income. The amount of net income was the same, regardless of the method employed. See *Boyd-Richardson Co.*, 5 T. C. 695. Here, it is not a matter of accounting method to reach the same result as net income, but whether capital expenditures are deductible as business expenses, since such treatment by the petitioner over a long period of time was not disapproved by the respondent. Obviously, such an accounting practice does not clearly reflect income; rather, it distorts it by taking as business expense deductions amounts which the statute requires taxpayers to recover only through deductions for exhaustion. We see the *Ohio Loan* case as distinguished from the instant matter, and the result of consistent treatment by the taxpayer there as not called for or logically permitted here.

Moreover, the petitioner's argument in attempting to apply the *Ohio Loan case*, that in previous years the Commissioner had allowed deduction of expenditures similar to the items here involved, therefore consistency requires allowance in these years, is not substantiated by the evidence, as to any considerable period. The record includes recommendations by revenue agents to the Commissioner for 1924, 1925, 1929, 1930, 1931, 1932, 1933, 1934, 1935, and 1936, that petitioner's income tax returns be accepted as filed, but with the qualifications as to 1929–1936, that the action is subject to final approval, and such final approval is not shown. For 1926 approval is shown by the Commissioner, subject to reopening in case of discovery of other information. But as to years prior to 1937, there is no showing as to the items of expense claimed in the returns. Though the Kingkade Hotel's manager since 1937 testified that items similar were treated as ordinary expense in prior years, and were allowed, later he said that the auditor made the returns and that he was not personally familiar with the details in that respect, and asked that the auditor help. We can not, therefore, accept his general testimony on the point, for without knowledge of the contents of the returns he did not know whether similar items were therein claimed as expense. The auditor also did not know what exceptions were taken by the Commissioner to repair and replacement items prior to 1937. Thus it is seen that no real showing is made that previously the petitioner had consistently

claimed and the Commissioner had allowed over a long period expense deductions essentially the same as now involved. We would not be justified in so holding, or in applying the *Ohio Loan* case. In that case there was such consistent treatment over a period of 15 years. We have shown above that it is otherwise inapplicable.

We find no error in respondent's action in disallowing the amounts as deductions for ordinary and necessary business expenses.

The amount of the operating loss in 1946 is controlled by our conclusion on the other issue. Accordingly, in view of our holding for the respondent on that question, the amount of the operating loss in 1946 determined by the respondent will not be disturbed.

*Decision will be entered for the respondent.*