**UNITED STATES of America,
Appellant,**

v.

**BANK OF AMERICA TRUST AND SAVINGS ASSOCIATION, a national banking association, Appellee.**

No. 17412.

United States Court of Appeals
Ninth Circuit.

May 15, 1962.

Rehearing Denied June 18, 1962.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Myron C. Baum, Attys, Dept of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for appellant.

George H. Koster, San Francisco, Cal., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and MURRAY, District Judge.

HAMLEY, Circuit Judge.

This appeal involves federal excess profits taxes for the years 1950, 1952 and 1953 in the aggregate amount of $1,510,-803.54. Deficiencies aggregating this sum were assessed and paid. Timely claims for refunds were filed and were rejected. The taxpayer then brought this action for recovery of the taxes paid. The district court granted judgment for plaintiff, the exact amount of recovery being computed by the Internal Revenue Service pursuant to the stipulation of the parties. The United States appeals.

Taxpayer is a national bank which used the reserve method of accounting for bad debts during the taxable years in question. Section 433(a) (1) (L) of the Internal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 433(a) (1) (L) relating to the computation of excess profits net income, provides that in the case of such a bank using the reserve method of accounting for bad debts, there shall be allowed, in lieu of the amount allowable under the reserve method for bad debts, a deduction for debts which became worthless within the taxable year, in whole or in part, within the meaning of section 23(k) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 23(k).

Giving effect to its construction of section 433(a) (1) (L), the taxpayer reported on line 19 of its excess profits tax form for each of those years (Schedule EP, Form 1120), the amount of debts determined to be worthless during such year, without reduction by the amount of recoveries or collections of debts previously charged off. The Commissioner, in keeping with Revenue Ruling 54–74, 1954–1 Cum.Bull. 162, made these reductions and assessed tax deficiencies resulting therefrom. In Revenue Ruling 54–74 it was stated, in effect, that such reductions were required by section 433 (a) (1) (G) of the Internal Revenue Code of 1939.

The question presented is whether, in these circumstances, the taxpayer is required to reduce its deduction for bad debts which became worthless during the taxable year by the amount of recoveries of bad debts deducted as worthless in prior excess profits tax years.

The answer to this question calls for a construction of subparagraphs (G) and (L) of section 433(a) (1), relating to bad debt recoveries and deductions in computing excess profits net income. These subparagraphs prescribe adjustments to be made in normal-tax net income in order to arrive at excess profits net income.[1] We therefore turn first to

---

[1]. This is indicated by the context in which subparagraphs (G) and (L) appear, which is as follows:

"433. Excess profits net income

"(a) Taxable years ending after June 30, 1950. The excess profits net income for any taxable year ending after June 30, 1950, shall be the normal-tax net income, as defined in section 13(a) (2), for such year increased or decreased by the following adjustments:

"(1) Adjustments.

\*    \*    \*    \* .    \*

"(G) Recoveries of bad debts. There shall be excluded income attributable to the recovery of a bad debt if the deduction of such debt was allowable from gross income for any taxable year beginning before January 1, 1940, or beginning after December 31, 1945, and ending before July 1, 1950, or if such debt was properly charged to a reserve for bad debts during any such taxable year;

\*    \*    \*    \*    \*

"(L) Bad debts in case of banks. In the case of a bank (as defined in section

a consideration of the manner in which bad debt recoveries and deductions were treated in computing normal-tax net income.

Under sections 22(b) (12) and 23(k) of the 1939 Code, bad debt recoveries and deductions could be accounted for in either of two ways. One of these was for the taxpayer to add to gross income the amount of any recoveries received on bad debts which had been deducted from gross income in prior years and which produced a reduction in tax for such years, and claim as a deduction from gross income the amount of bad debts which became worthless during the particular tax year.[2]

The other way of accounting for bad debt recoveries and deductions in computing normal-tax net income was for the taxpayer to use the reserve method of accounting for bad debts. Under this method, the taxpayer was allowed to deduct from gross income a reasonable addition to the reserve instead of the amount of bad debts which actually became worthless during the taxable year. Debts which became worthless were charged to the reserve and the reserve was credited with the amount of recoveries received on debts previously charged to the reserve. Thus, for purposes of computing normal-tax net income, the bad debt reserve reflected the amount of bad debt recoveries, because crediting them to the reserve re-

duced the amount of the reasonable addition otherwise allowable as a deduction.[3]

We turn now to the adjustments for bad debt recoveries and deductions prescribed in subparagraphs (G) and (L) of section 433(a) (1). Subparagraph (G) pertains to the adjustment to be made in the manner of accounting for bad debt recoveries. Examination of this subparagraph, quoted in note 1 above, indicates that it applies to all taxpayers, including banks, and to those who account for bad debt recoveries by the reserve method as well as those who do not.

With regard to all taxpayers, subparagraph (G) excludes from income attributable to the recovery of bad debts, as such income would be computed in determining normal-tax net income, the portion thereof which is attributable to bad debts which were allowed as deductions, or as charges to a reserve for bad debts, in a *non*-excess profits tax year.

The bad debt recoveries here in issue are not attributable to any bad debts which were allowed as deductions, or as charges to a reserve for bad debts, in a non-excess profits tax year. It follows that, not being excluded under subparagraph (G), such recoveries, being included in computing normal-tax net income, are likewise included in computing excess profits net income.

---

104) using the reserve method of accounting for bad debts, there shall be allowed, in lieu of the amount allowable under the reserve method for bad debts, a deduction for debts which became worthless within the taxable year, in whole or in part, within the meaning of section 23(k)."

2. See Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; National Bank of Commerce of Seattle v. Commissioner, 9 Cir., 115 F.2d 875. Instead of adding the recoveries to gross income, the taxpayer could achieve the same result by reducing his bad debt losses by the amount of such recoveries.

3. Beginning with the year 1944, appellee used the reserve method of accounting for bad debts. In determining its annual additions to its reserve for bad debts, ap-

pellee followed the provisions of Mimeograph 6209, 1947–2 Cum.Bull. 26. Paragraph 6 thereof provides that bad debt losses sustained are to be charged to the reserve, "and recoveries made of specific debts which have been previously charged against the reserve by a bank on the reserve method of treating bad debts should be credited to the reserve." Thus, in computing its normal-tax net income appellee, along with all other banks using the reserve method of accounting for bad debts, in effect added to gross income recoveries of bad debts which had produced a reduction in taxes for previous years. Compare Zellerbach Paper Co. v. Commissioner, 8 T.C. 511; Boyd-Richardson Co. v. Commissioner, 5 T.C. 695; J. F. Johnson Lumber Co. v. Commissioner, 3 T.C. 1160.

The adjustment delineated in subparagraph (L) of section 433(a) (1), provides some relief for banks with regard to bad debt deductions but no relief with regard to bad debt recoveries. This is indicated by the language of the subparagraph quoted in note 1 above. That subparagraph contains no language constituting an exception, in the case of banks, as to the method of accounting for bad debt recoveries. It does make express reference to section 23(k) of the 1939 Code. That section and the regulations issued thereunder have consistently provided that recoveries of bad debts previously charged off must be included in gross income when received.[4]

█ The legislative history of subparagraph (L) also indicates that it was not intended to afford banks any relief with respect to bad debt recoveries, but was only designed to somewhat equalize their position with that of other taxpayers, including banks not using the reserve method, in reflecting bad debt deductions in their excess profits tax returns.

Where the reserve method of accounting for bad debt recoveries and deductions is used, a limitation is placed on the total amount of reserves for which bad debt deductions may be claimed.[5] But the House and Senate Committees considering the bill which became the Excess Profits Tax Act of 1950 realized that banks using the reserve method might not be able to claim a large enough deduction for excess profits tax purposes, since their accumulated reserves already approached the maximum allowable. In order to afford these banks some measure of relief, the committees therefore determined that banks would be allowed a deduction of the amount of the debts which actually became worthless instead of the limited, or possibly non-existent, additions to the reserve to which they might otherwise be entitled.[6]

4. See Article 151 of Treasury Regulations 62, 65 and 69, promulgated under the Revenue Acts of 1921, 1924 and 1926, Article 191 of Treasury Regulations 74 and 77, promulgated under the Revenue Acts of 1928 and 1932, Article 23(k)–1 of Treasury Regulations 86, 94 and 101, promulgated under the Revenue Acts of 1934, 1936 and 1938, and Sections 19.23 (k)–1, 29.23(k)–1 and 39.23(k)–1 of Treasury Regulations 103, 111 and 118, promulgated under the Internal Revenue Code of 1939. Thus, sections 29.23(k)–1 of Treasury Regulations 111 and 118 provide, in pertinent part:
"* * * Any amount subsequently received on account of a bad debt or on account of a part of such debt previously allowed as a deduction for income tax purposes, must be included in gross income for the taxable year in which received, except to the extent excludible from gross income under the provisions of section 22(b) (12) * * *."

5. In the case of banks, this limitation is prescribed in Mimeograph 6209, 1947–2 Cum.Bull. 26. By prescribing a limitation on the total amount of the reserve, the same result is reached with regard to accounting for bad debt recoveries as where the reserve method is not used. Where the reserve method is not used, such recoveries are added to gross income. Where the reserve method is used, the re-

serve is credited with the amount of bad debt recoveries. But when the reserve reaches the prescribed limit on the total amount of the reserve, deductions from taxable income, for the purpose of crediting the reserve, must cease until the reserve is again reduced.

6. See S.Rep. No. 2679, 81st Cong., 2nd Sess., p. 15 (1951–1 Cum.Bull. 240, 250); H.Rep. No. 3142, 81st Cong., 2nd Sess., p. 14 (1951–1 Cum.Bull. 187, 196). In the House Committee report it is stated, at page 14:

"For income tax purposes, banks have been permitted to use the reserve method of accounting for bad debts. The banks which elected to use this method, beginning in 1947, have for the most part accumulated reserves which equal or approach the maximum allowable under the existing rulings. The fact that the reserves have reached or approached the allowable maximum, plus the probability that losses from bad debts will be abnormally low during the excess profits tax years, means that the deduction in the excess profits tax period will be comparatively low. To permit an equitable comparison between the base-period net income and the income of the excess profits tax years, the bill permits banks using the reserve method of accounting for bad debts to claim a deduction for the

There is nothing whatever in the legislative history of subparagraph (L), or of any other provision of the 1950 Act, which indicates that (L) was designed to affect, in any way, the method of accounting for bad debt recoveries, as set forth in subparagraph (G) of section 433(a)(1).

■ But while subparagraph (L) does not pertain to bad debt recoveries, the Commissioner chose to have the returns of banks using the reserve method reflect inclusions in income of bad debt recoveries, by requiring that they be taken into account in computing deductions for bad debts under subparagraph (L), rather than by including such recoveries under gross income. This is the purport of Revenue Ruling 54–74, referred to above. It was accomplished simply by requiring that the deduction for bad debts which became worthless in the respective years be reduced by the amounts of recoveries of bad debts which had been credited to the reserve in prior excess profits tax years. That is what appellee failed to do in this case, and what the Commissioner did in recomputing appellee's excess profits taxes.

The fact that the Commissioner thus chose to have such income and such deductions accounted for in one step, in computing deductions for bad debts under subparagraph (L), rather than in the indicated two steps, has not prejudiced the taxpayer. The results would be the same under either method of accounting.

In reaching a different conclusion the district court relied upon Commissioner v. Mercantile National Bank at Dallas, 5 Cir., 276 F.2d 58, where the identical problem was presented. The court there held, in effect, that since subparagraph (L) did not provide that the deduction for bad debts thereby authorized was to be reduced by bad debt recoveries of the kind here in question, there was no statutory warrant for doing so.

In our view, this reasoning overlooks the fact that the reduction for bad debt

recoveries required under Revenue Ruling 54–74 finds its authority not in subparagraph (L), but in paragraph (a) and subparagraph (G).

In the above-cited case, at page 60, it is stated that neither in subparagraph (L) "nor elsewhere in section 433(a) did Congress provide for the inclusion by such banks of recoveries of bad debts." We are unable to agree with this conclusion.

The opening paragraph of section 433 (a) quoted in footnote 1, expressly provides for the inclusion by all taxpayers (including banks) in excess profits net income of all normal-tax net income which, as indicated above, would include these bad debt recoveries, subject only to the adjustments provided for in section 433(a)(1). As previously pointed out, the bad debt recoveries here in issue are not excluded by any of the adjustments so prescribed.

■ In the Mercantile National Bank case, it is also stated, at page 62, that subparagraph (G) "considered in context, relates to taxpayers who do not use the bad debt reserve method of accounting and so are required to include bad debt recoveries in the computation of normal tax income." We respectfully disagree with this conclusion for two reasons: first, all taxpayers, not just those who use the specific charge-off method of accounting for bad debts, are required to reflect bad debt recoveries in the computation of their normal-tax income; second, subparagraph (G) is applicable to taxpayers on the reserve method, for it is expressly provided in that section that certain recoveries may be excluded from excess-profit income " * * * if such debt was properly charged to a reserve for bad debts during any such taxable year; * * *."

If the Excess Profits Tax Act of 1950 is given the construction for which appellee contends, all non-bank taxpayers, and all bank taxpayers which account for bad debt recoveries and deductions by a

purpose of determining excess profits tax net income on the basis of debts which

became worthless in whole or in part during the taxable year."

non-reserve method, must account for bad debt recoveries of the kind here in issue, while banks using the reserve method are excused from such a requirement. In our opinion, neither the language of the act nor the legislative history warrants such a result.

The judgment is reversed and the cause is remanded with directions to amend the judgment in conformity with this opinion.