Sam E. Broadhead v. Commissioner.
Broadhead v. Commissioner
Docket No. 49777.
United States Tax Court
T.C. Memo 1955-328; 1955 Tax Ct. Memo LEXIS 9; 14 T.C.M. (CCH) 1284; T.C.M. (RIA) 55328; December 20, 1955
*9 de Quincy V. Sutton, Esq., for the petitioner. Paul J. Weiss, Jr., Esq., and James R. Harper, Jr., Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: This proceeding involves deficiencies in income tax in the amounts of $53,177.58 and $11,804.06 for 1946 and 1947, respectively, and a penalty of $26,588.79 under section 293(b), I.R.C. of 1939, for 1946. The issues raised by the pleadings and not settled by stipulation are: (1) The amount of petitioner's opening inventory in 1946 for (a) lumber, and (b) each year on automotive equipment; (3) Whether sales of lumber in 1947 should be increased in the amount of $7,389; and (4) Whether any part of the deficiency in 1946 is due to fraud with intent to evade tax. Findings of Fact Petitioner, a resident of the Meridian, Mississippi, filed his income tax returns for the taxable years with the collector of internal revenue for the district of Mississippi. Prior to and during the taxable years petitioner was engaged in the production and sale of lumber. Prior to 1946 petitioner did not take inventories into consideration in determining his net taxable income. The books and *10 records maintained by him for 1946 did not show the cost of the lumber he had on hand at the beginning of the year. The income tax return filed by petitioner for 1946 reported an opening lumber inventory of $189,000 based upon cost $42of per thousand for 4,500,000 board feet, and closing lumber inventory of $183,108.64. The cost figures for the inventories were supplied by petitioner to the public accountant who prepared the return. The income tax return filed by petitioner for 1947 reported an opening lumber inventory of $188,108.64. The increase of $5,000 in the opening lumber inventory in 1947 over the closing inventory for 1946 was not adjusted by respondent in his determination of the deficiency for 1947. Petitioner reported a loss from lumber operations in 1946. In computing the loss he deducted as expenses the amount of $15,366.06 for contract stacking, $31,138.55 for hauling, and $186,670.42 for salaries and wages. The respondent in determining the deficiency for 1946 used cost of $36.21 per thousand feet, and, as a result, he increased the net income of petitioner by $26,055. The unit cost of $36.21 is the average cost computed by the Southern Pine Association of New *11 Orleans for like lumber. The statistical data from which the Association computed the average cost of $36.21 per thousand feet was obtained from reports voluntarily submitted by 138 of about 3,500 mills operating in 12 southern states from Virginia to Texas, and producing about 19 per cent of the total southern pine produced in 1945. Petitioner operated a commissary store primarily as an accommodation to some of his employees. The return filed by petitioner for 1946 reported store sales of $67,397.35 and included in the amount of $65,881.84, reported for purchases, the amount of $5,000 for an opening inventory. In determining the deficiency for 1946 respondent disallowed the opening merchandise inventory claimed in the return. Petitioner acquired new and used trucks for transporting lumber and logs in the conduct of his business. Some of the used trucks acquired in 1946 in connection with the purchase of several mills had been in operation for quite a while. Trucks used by petitioner for logging were subjected to greater wear and tear than trucks used to transport lumber, because of the condition of the roads over which they traveled. The cost of automotive equipment acquired *12 by petitioner during the years 1940 to 1945, inclusive, was allowed by respondent as an expense deduction in the year of acquisition in lieu of depreciation. Petitioner claimed in his return for 1946 a deduction of $17,137.70 for depreciation on trucks, all of which were acquired after February of that year, based upon cost of $59,503.49 and a useful life of two years. [1] Deductions for depreciation on the same equipment were claimed in the return filed by petitioner for 1947, based upon a useful life of four years, with the exception of two used trucks acquired on May 1, 1946, at a cost of $14,000 on which the rate of 50 per cent was used. The amounts of depreciation claimed by petitioner in his returns for 1946 and 1947 were allowed by respondent in his determination of the deficiencies for the taxable years. Commencing in 1947 petitioner assigned to a bank invoices for lumber sales as security for notes, evidencing loans of 80 per cent of the amount of the invoices. The transactions with the *13 bank were reflected in entries made in petitioner's books, including a credit to an account designated "Notes & Drafts Deposited." As collections were made by the bank under the invoices assigned to it, the account was charged with a balancing credit to accounts receivable. During the course of an examination of petitioner's books in 1949 by a public accountant to determine his earnings for inclusion in tax returns, it was ascertained that the account set up for assigned invoices had a credit balance of $7,389 at the close of 1947. The excess was an overstatement of what petitioner owed the bank at that time on invoices assigned as security for notes. To balance the account, the accountant transferred the amount to the credit of the net worth account of petitioner. Some of the records of petitioner for 1947 were missing at the time the public accountant made the examination and as a result he was unable to make a thorough audit. The respondent determined that petitioner's sales of lumber in 1947 were understated by the amount of the credit balance of $7,389 in the "Notes & Drafts Deposited" account at the close of the year. The return of petitioner for 1946 was filed on May 15, 1947. *14 Petitioner was a member of a partnership doing business under the trade name of Kennedy Lumber Company, some of the records of which were maintained in the books of petitioner. In June 1947 the public accountant ascertained that petitioner's sales of lumber were understated in his income tax return for 1946 by the amount of $54,872.81. The understatement was caused by carrying a subtotal at the bottom of a page of petitioner's sales journal to the top of the column of the account on the next page for the Kennedy Lumber Company. The error resulted in an understatement of sales of the petitioner in the amount of $54,872.81 and an overstatement of sales of the Kennedy Lumber Company in the same amount. The overstatement was discovered by the accountant when closing the books of the Kennedy Lumber Company, which kept its books on the basis of a fiscal year. The error in carrying the subtotal to the wrong column was made by an assistant of the public accountant. Petitioner was in no way responsible for the mistake. The accountant gave prompt notice to petitioner of the error and notified him in writing on June 26, 1947, that an amended return would be prepared to correct the mistake *15 and that it would be necessary for him to file the return and pay the additional tax. On July 10, 1947, an amended return was prepared for 1947 in which lumber sales were increased by the amount of $54,872.81 to correct the understatement appearing in the original return. The accountant mailed the amended return to petitioner on July 10, 1947, with the advice that it should be filed with the collector at Jackson, Mississippi. Petitioner has never filed an amended return for 1946. Opinion Issue I Cost of opening lumber inventory - 1946. The only difference between the parties under this issue is cost. Petitioner used a unit figure of $42 in his return and respondent reduced the amount to $36.21, or $5.79 per thousand board feet. Petitioner did not use inventories in reporting taxable income prior to 1946. Respondent employed the inventory method in determining petitioner's income tax liability for 1945, and in computing the deficiency for 1946 he used the closing inventory for 1945 as the opening inventory for 1946. None of the closing inventory had been on hand longer than five months. As the records available to him were not regarded as sufficiently reliable to show cost, *16 respondent sought other means of determining the cost to petitioner of the lumber on hand. He selected data prepared by the Southern Pine Association from reports of lumber producers in southern states, which showed an average cost during the year of $36.21. In May 1947, during the course of an interrogation by a special agent on the cost of opening inventories in the years 1940 to 1946, inclusive, petitioner was informed that figures compiled by the Southern Pine Association had been used to arrive at the cost of his inventories. After being so advised petitioner testified, "I would not grumble about that. I would accept them [that] prices." In a financial statement rendered to a bank in October 1945 he valued 600,000 feet of lumber in his yards at $30 a thousand. Statements prepared by a public accountant for petitioner disclosed cost of about $28 per thousand for about 220,000 feet of lumber in January 1946, and $31 in the next month for about 315,000 feet of lumber. Opposed to such prices is testimony offered by petitioner on a few purchases of a small quantity of lumber in October, November, and December 1945 at a cost of $45 a thousand feet at his yard. Petitioner contends *17 that the cost figure determined by respondent does not include the cost of stacking and hauling the lumber, which he estimated at a total of about $9 per thousand feet. Petitioner included in his return as expenses incurred in sales of lumber large amounts for salaries and wages, contract stacking and hauling. Without evidence to the contrary, we are not in a position to say that the cost is not included in these selling expenses. Moreover, petitioner admitted on brief that there were instances, not identified, to which the extra cost would not apply. Further discussion of the evidence is unnecessary. Respondent's determination is presumed to be correct and evidence offered by petitioner is not in our opinion sufficient to overcome it. Accordingly, the respondent is sustained on this issue. Issue II. Cost of opening commissary inventory - 1946. No proof was made by petitioner that he kept an inventory for merchandise sold in his commissary store and no contention is made to the contrary. An opening inventory of $5,000 was included as part of the amount reported in the return for purchases made during the year. Respondent did not allow any amount for merchandise on hand at the *18 beginning of the year and as a result increased petitioner's taxable income by $5,000 for store income. The only contention made by petitioner on brief under this issue is that we should take judicial notice of the fact that the business having sales of about $65,000 in 1946 would have a stock of at least $5,000. No authority is cited to support the argument and we are not aware of any right to take judicial notice of the fact. Without evidence to show that petitioner had an opening inventory in his store, the determination of the respondent will not be disturbed. Issue III. Depreciation automotive equipment - 1946 and 1947. Petitioner is claiming deductions each taxable year of the excess of cost over the amount claimed in his returns and allowed by respondent in determining the deficiencies. His grounds are the action of respondent prior to 1946 in allowing the cost in the year of acquisition as an expense in lieu of depreciation, and testimony on his behalf that the equipment did not have a useful life beyond the year acquired. The basic difference between the parties is whether the costs should be deducted as expenses in the year incurred or recovered over a longer period *19 as depreciation based upon a useful life of more than one year. Allowance of the entire cost as a deduction in the year of outlay is not permissible under the statute without proof that the useful life of the asset did not extend after the year of acquisition. The useful life of the equipment involved here is a factual question, in the determination of which the action of respondent in permitting deductions on similar property in prior years as expenses is not controlling. Hotel Kingkade, 12 T.C. 561, affd. 180 Fed. (2d) 310. The burden of petitioner was to establish that the equipment did not have a useful life beyond the year of acquisition. Depreciation was claimed and allowed in 1946 based upon a useful life of two years. The same rate was used and accepted by respondent in 1947 for two trucks, acquired on May 1, 1946, and the rate of 25 per cent for the remaining equipment. The logical inference to be drawn from the deductions so claimed by petitioner is that the equipment was in useful condition at the close of each taxable year. Opposed to such repreentations *20 as to the useful life of the assets, we have only testimony of an accountant, who disclosed no knowledge of the actual condition of the property at the close of each year, and testimony of petitioner on some of the conditions under which the trucks were operated, and that trucks acquired as part of the purchase of several mills in 1946 were not serviceable after that year. The evidence is not sufficient for us to conclude that the amounts claimed in the returns and allowed by respondent were not reasonable. Accordingly, we hold for respondent on this issue. Issue IV. Understatement of lumber sales. No reasons were given by respondent in his notice of deficiency for holding that the credit balance of $7,389 in the "Notes & Drafts Deposited" account, which was transferred to the net worth account of petitioner in 1949 by an adjusting entry made as of December 31, 1947, represented unreported lumber sales. On brief he says that the determination was made because the account was "directly and inseparably linked to sales." The revenue agent who examined the records of petitioner in connection with an investigation of the return for 1947, and made a like finding, so testified. Although *21 lack of records of petitioner prevented the revenue agent from making a complete audit of the account and related accounts, other than this adjustment he found no other unreported sales of lumber. The extent of his effort to analyze the account is not shown. He regarded the account as "an unidentified source of funds" and assumed that the credit balance in it represented unreported sales of lumber. The accountant who made or supervised the making of the entry testified that the amount represented an indebtedness of petitioner to the bank on invoices at that time; that he did not regard the balance as income, and that the adjustment was made so that the account would not be out of balance as of the beginning of 1948. A certified public accountant testified that the account "does not, in and of itself, possess any income characteristics." The evidence establishes that the only connection the account had with sales was to record the amount unpaid on invoices assigned to a bank as collateral for loans. The account served no other purpose, as we view the evidence, and was never intended to reflect sales or other income. Under the circumstances we conclude that respondent erred in including *22 the amount in income of petitioner as unreported lumber sales in 1947. Issue V. Fraud - 1946. The respondent alleged in his answer that petitioner, with intent to evade tax, understated in his return for 1946 net income in the amount of $87,878.57, the amount by which he increased taxable income for overstatements of opening inventories for lumber and the commissary store, an excessive claim for depreciation, and an understatement of lumber sales. Upon brief he relies only on the understatement of lumber sales and overstatement of the opening lumber inventory as grounds for imposing the penalty. Faced with proof that petitioner was not aware of the accounting error giving rise to the understatement of lumber sales until after the return was filed, respondent now says that petitioner "willfully and deliberately attempted to evade and defeat his income taxes when he refused to file the amended return after being advised to do so by his accountant." The respondent had the burden of proof under the issue. He established no more than the cause of the understatement; lack of knowledge by petitioner of the bookkeeping error until after the return was filed; the preparation of an *23 amended return by the accountant of petitioner, and that petitioner never filed the amended return, even though advised to do so by his accountant. Petitioner was not required by statute to file an amended return, and if one had been tendered for filing, respondent could have declined to accept it. Ira Goldring, 20 T.C. 79, 83. If the return was false and fraudulent with intent to evade tax, as respondent alleged in his answer raising the issue, the filing of an amended return would not have cured the fraud. George M. Still, Inc., 19 T.C. 1072, affd. 218 Fed. (2d) 639. Petitioner testified at the hearing but respondent did not question him on any reason he might have had for not filing an amended return, or whether he failed to notify the collector by other means. The agent of respondent who investigated the return also testified at the hearing, but respondent did not question him on how or when he first became aware of the bookkeeping error that resulted in the understatement of lumber sales in the return. Other agents of the respondent were investigating *24 returns of petitioner for years prior to 1946 when the accounting mistake was discovered by petitioner's public accountant. It is possible that the respondent's agents learned of the omission at that time. In any event, respondent failed to prove that he was not timely notified of the accounting error. We can not conclude from the meager proof made by respondent that petitioner endeavored to evade income tax by failing to file an amended return. Absent records showing the cost of his opening lumber inventory, petitioner resorted to an estimate. Respondent's determination of cost was less than $6 per thousand feet under the estimate and it was based upon costs of other lumber dealers, some of whom operated at a great distance from petitioner's mills. The small amount of difference between the costs so determined discloses the reasonableness of the petitioner's estimate. Respondent asserts that if petitioner had made his books available to him at the hearing he could have "clearly established that there was absolutely no justification whatsoever for a $42.00 valuation and that, as a matter of fact, said valuation was a fraud upon the revenue." Respondent had the burden of proof *25 under the issue and absence of evidence to make out a case by the necessary clear and convincing proof must be charged to him and not to petitioner. The respondent has failed to establish that any part of the deficiency is due to fraud with intent to evade tax. Accordingly, we hold for petitioner on this issue. Decision will be entered under Rule 50. Footnotes
1. No depreciation was claimed on other trucks purchased December 22, 1946, at a cost of $8,000. The equipment was listed as trucks but included a Studebaker car and three trailers.↩